IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GSK TECHNOLOGIES, INC. § § **Plaintiff** § § vs. § § **SCHNEIDER ELECTRIC, S.A.;** § **SCHNEIDER ELECTRIC HOLDINGS, INC.** § § **Defendants** § § | CASE NO. 6:06CV361 PATENT CASE |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Schneider Electric, S.A.'s ("SESA") and Schneider Electric Holdings, Inc.'s ("SEHI") separate Motions to Dismiss Plaintiff GSK Technologies, Inc.'s ("GSK") Complaint Pursuant to Rule 12(b)(2) (Docket Nos. 5 and 7). For the reasons discussed below, the Court **DENIES** SESA's and SEHI's Motions to Dismiss.

**FACTUAL BACKGROUND**

On August 15, 2006, GSK filed suit against SESA alleging infringement of its United States Patent No. 4,949,214 (the "'214 Patent") entitled "Trip Delay Override For Electrical Circuit Breakers." On October 23, 2006, GSK amended its complaint to accuse SEHI and Square D Company ("Square D") of infringement. SESA is a French corporation and owns Schneider Electric Industries S.A.S. ("SEISAS"), a French company. SEISAS owns SEHI, a Delaware corporation. SEHI owns Square D, a Delaware corporation. SESA and SEHI each filed a Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure claiming this Court does not have personal jurisdiction over them because they do not have sufficient minimum contacts with the State

1

of Texas.  GSK argues that SESA and SEHI have sufficient minimum contacts with the State of Texas because they purposefully market and offer for sale the Square D brand products to U.S. residents and knowingly place these products into the stream of commerce in Texas through their subsidiary.

## APPLICABLE LAW

Because personal jurisdiction in a patent case is intimately related to patent law, Federal Circuit law governs the issue.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendants are subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff.  *Id*.  A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000);  *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  Although federal courts hearing patent cases defer to the forum state's interpretation of its long-arm statute, Federal Circuit law controls whether the exercise of personal jurisdiction comports with federal due process.  *3D Sys.*, 160 F.3d at 1377.

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'"  *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).  Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry.  Due process requires an out-of-state defendant to have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial

2

justice. *Int'l Shoe*, 326 U.S. at 316.

## ANALYSIS

1.  Minimum Contacts

GSK alleges jurisdiction over SESA and SEHI is proper under the stream of commerce theory. "The forum does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). In *Asahi Metal Industry Co. v. Superior Court*, the Supreme Court reiterated that the stream of commerce theory provides a valid basis for finding minimum contacts. *See* 480 U.S. 102, 112 (1987). However, the Court split as to the exact requirements of applying the theory. *See id.* at 112, 117. Four Justices on the Court adopted the view that a defendant must both place a product in the stream of commerce and take some action to purposefully direct that product toward the forum state. *See id*. at 112. The other four Justices adopted the view that a showing of additional action aside from placing the product in the stream of commerce was not necessary. *See id.* at 117.

The Federal Circuit applied the stream of commerce theory in *Beverly Hills Fan Co. v. Royal Sovereign Corp. See* 21 F.3d 1558, 1566 (Fed. Cir. 1994). The Federal Circuit emphasized that "'[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject it to suit.'" *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at 297). However, instead of adopting one of the two versions of the stream of commerce theory laid out by the Supreme Court in *Asahi* the Federal Circuit stated, "We need not join in this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made

the required jurisdictional showing." *Id*. Similarly, the Court in this case does not need to join in the debate because GSK made the required jurisdictional showing under either version of the stream of commerce theory. *See id*. at 1566.

When a court does not hold an evidentiary hearing, the party seeking jurisdiction must make out a prima facie case supporting jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The Court will "resolve in [the party seeking jurisdiction's] favor, all conflicts between the facts contained in the parties' affidavits and other documentation." *Id*.

SESA and SEHI deny they introduce any of the accused products into any distribution network or into any stream of commerce anywhere in the world. This denial controverts GSK's jurisdictional allegations on point. However, GSK introduced evidence the allegedly infringing Square D brand products are sold and were bought in a well-known home improvement store in the Eastern District of Texas. It is undisputed that distribution channels have been intentionally set up to sell the Square D brand products in home improvement stores and other retailers in the United States. Within the United States, the State of Texas has the second largest population of any state and three of the ten most populated cities. In light of resolving the controverted factual allegations in favor of GSK, it is only reasonable to assume that SESA and SEHI knew, or reasonably could have foreseen, that the Square D brand of circuit breakers would be sold in the State of Texas. *See Beverly Hills Fan*, 21 F.3d at 1564. Accordingly, under the applicable standard, GSK has sufficiently alleged that SESA and SEHI purposefully placed the accused products into the stream of commerce with the expectation the Square D brand products would be sold in Texas.

SESA and SEHI argue the mere fact that a subsidiary exclusively sells or offers for sale the accused products is not sufficient to exercise personal jurisdiction over the subsidiary's parent. *See*

*3D Sys.*, 160 F.3d at 1380 (finding no personal jurisdiction over parent of a subsidiary that was subject to personal jurisdiction where parent directed no activities toward residents of forum state); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (upholding district court's dismissal for want of personal jurisdiction of a parent of a subsidiary). The cases SESA and SEHI cite are not on point. In *3D Systems*, the plaintiff did not allege, and the court did not address, whether the defendant had minimum contacts with the State of California under the stream of commerce theory. The plaintiff in *3D Systems* did not allege the defendant corporation was selling or offering to sell the infringing products in California through its subsidiary. *See* 160 F.3d at 1381. In *Phonometrics*, the Federal Circuit's finding that plaintiffs failed to make a prima facie showing of personal jurisdiction over the parent company was based on the facts before it, which are notably different than those here. Further, the jurisdictional issue was prudentially moot since the Federal Circuit upheld summary judgment of non-infringement in favor of the subsidiary.

GSK presented evidence that SESA and SEHI identify and advertise themselves interchangeably as "Schneider Electric" to promote the Square D brand. Throughout their websites and sales literature, including the instruction sheet provided with the alleged infringing product, SESA and SEHI reference Square D as their "brand name" for the sale of circuit breakers in the United States. SESA and SEHI freely use the Square D mark and make public representations that they are the actual company behind the Square D brand and reference Square D as a North American division of Schneider Electric.

In light of resolving factual conflicts in favor of GSK, SESA and SEHI have sufficient minimum contacts with the State of Texas to justify subjecting them to personal jurisdiction.

5

2. Traditional Notions of Fair Play and Substantial Justice

Even if a defendant has minimum contacts with the forum, personal jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316. Determining whether personal jurisdiction offends traditional notions of fair play and substantial justice involves balancing (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the interest of the states in furthering their social policies. *Viam*, 84 F.3d at 429. Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568 (citing *Burger King*, 471 U.S. at 477).

Applying the *Viam* factors to the facts in this case does not suggest that exercising jurisdiction over SESA and SEHI would offend traditional notions of fair play and substantial justice. SESA and SEHI do not provide evidence that they would be substantially burdened by having to defend this case in Texas. It is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome. *See World-Wide Volkswagen*, 444 U.S. at 294. The State of Texas has a significant interest in preventing patent infringement within its borders and in protecting the patent rights of its citizens. *See Beverly Hills Fan*, 21 F.3d at 1568 ("[The forum state] has an interest in discouraging injuries that occur within the state."). Texas has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws. GSK has an interest in litigating the

case in Texas because it is a Texas corporation. The interstate judicial system's interest is not directly applicable to the present case and is, therefore, not addressed.

This is not one of the rare cases where exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. The State of Texas and GSK's interests are not so attenuated that they are clearly outweighed by any burden SESA and SEHI would suffer by having to defend this case in Texas. Therefore, exercising personal jurisdiction over SESA and SEHI does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

Resolving the controverted factual allegations in favor of GSK, SESA and SEHI have sufficient minimum contacts with the State of Texas to justify subjecting them to personal jurisdiction in the State of Texas. Furthermore, exercising personal jurisdiction over SESA and SEHI in the State of Texas does not offend traditional notions of fair play and substantial justice. Accordingly, the Court **DENIES** SESA's and SEHI's Motions to Dismiss.

**So ORDERED and SIGNED this 14th day of March, 2007.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**